UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA BROOMFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 1267 DDN |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Cassandra Broomfield for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*; § 1601, *et seq*. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff Cassandra Broomfield was born on May 28, 1973, and filed her DIB application on December 23, 2014, (Tr. 224-34)[2] and her SSI application on January 27, 2015. (Tr. 235-39). She alleged a disability onset date of January 20, 2014, due to mood disorder/depression, lower-extremity neuropathy, fibromyositis, insomnia, hypermobile

---

[1] Andrew M. Saul is now the Commissioner of Social Security. He is therefore substituted as the defendant in this case in his official capacity. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g) (last sentence).

[2] With a date last insured of December 31, 2019, for her DIB claim. (Tr. 247).

joints, plantar fasciitis, multiple joint pain, psoriasis, hypothyroidism, and polycystic ovary syndrome. (Tr. 264). Her application was denied by a disability examiner on March 11, 2015, (Tr. 148), but plaintiff appealed the decision and requested a hearing by an administrative law judge. (Tr. 155).

On December 6, 2016, plaintiff appeared before an ALJ. (Tr. 78-117). A vocational expert also testified at the hearing. (*Id.*). On September 14, 2017, the ALJ denied plaintiff's applications. (Tr. 18-45). On May 30, 2018, the Appeals Council denied plaintiff's request for review (Tr. 7-12), and the ALJ's decision became the final decision of the Commissioner now before this Court for review. 20 C.F.R. § 404.984(b)(2).

## II. MEDICAL HISTORY

The Court adopts the parties' several statements of uncontroverted material facts (Docs. 20, 27). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## III. DECISION OF THE ALJ

At Step One, the ALJ found that plaintiff met the insured status requirements and had not engaged in substantial gainful activity during the period from her alleged disability onset date of January 20, 2014, through her date last insured, December 31, 2019. (Tr. 23-24). At Step Two, the ALJ found that plaintiff had the severe impairments of mild polyneuropathy, mild lumbar osteoarthritis, mild obesity, eczema/rosacea, and plantar fasciitis. (Tr. 24-26). At Step Three, the ALJ found that plaintiff had no impairments or combination of impairments that met or were the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 26-27); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ then found that plaintiff has the residual functional capacity ("RFC") to:

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to stand and/or walk for two hours at a time for a total of six hours in an eight-hour workday; sit for three hours at a time up to eight hours in a workday; lift/carry 20 pounds occasionally and 10 pounds frequently; frequently reach in all directions, handle, finger, feel, push, pull and operate foot controls bilaterally; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel and crouch; occasionally crawl; avoid all exposure to unprotected heights; limited to occasional exposure to moving mechanical parts, humidity, wetness, extreme cold and vibration; and frequently operate a motor vehicle.

(Tr. 27).

At Step Four, the ALJ found that plaintiff was able to perform her past relevant work as a retail sales clerk. (Tr. 37). The ALJ also made an alternative Step Five finding that plaintiff was capable of performing other jobs existing in significant numbers in the national economy, such as cafeteria attendant, electrical accessories assembler I, and cashier II. (Tr. 38).

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the court may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental

impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pates-Fires*, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her condition meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant has the RFC *See* to perform her past relevant work (PRW). *Id*. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 404.1520(a)(4(v).

## V. <u>DISCUSSION</u>

Plaintiff argues that the ALJ (a) failed to properly evaluate plaintiff's subjective complaints; (b) erred in not finding insomnia to be a severe impairment; (c) erred in affording plaintiff's treating podiatrist opinion "little to no weight"; and (d) failed to properly consider plaintiff's obesity.

### A. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in finding that plaintiff's ability to engage in personal activities was inconsistent with her subjective complaints. Throughout the record, plaintiff complained of lower extremity pain that she claimed limited her to

standing or walking for 45 minutes at a time before needing to rest. (Tr. 296). At the hearing, she testified this was due to her plantar fasciitis and lower extremity neuropathy. (Tr. 83, 108). At the same time, plaintiff testified that she can only sit for limited amounts of time due to fluid buildup in her legs. (Tr. 103, 621). The ALJ concluded that these subjective complaints were "not entirely consistent" with the evidence in the record. (Tr. 28).

The ALJ pointed to plaintiff's reports that she could drive, care for her 13-year-old daughter, prepare meals twice a week, drive, shop, manage her finances, and spend time with family. (Tr. 28, 291). Plaintiff stated she buys her daughter clothes and school materials. (Tr. 290). Generally, a person's ability to engage in personal activities such as cooking, cleaning, or a hobby, does not constitute substantial evidence that she has the functional capacity to engage in substantial gainful activity. *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

However, the ALJ not only pointed to plaintiff's activities of daily living, but also noted that plaintiff was noncompliant with her providers' recommendations, had only a conservative course of treatment, and had medical records inconsistent with her reported symptoms. As the ALJ noted, plaintiff often reported pain when her physical objective findings were normal, other than subjective complaints of pain. (Tr. 565, 575-76, 584, 594, 602, 611, 622, 630, 641, 651, 662, 713-14, 727-28, 736-37, 747). For example, on March 5, 2014, she had full motor strength, normal bulk and tone, no tremor or abnormal movement, normal sensation throughout, normal reflexes, proper Babinski responses, normal coordination, normal gait, and normal station. (Tr. 714).

On March 31, 2014, plaintiff met with an orthopedist for evaluation of her bilateral foot pain. (Tr. 919). Dr. Metzler found no swelling in plaintiff's lower extremities, feet, or ankles; full active range of motion in the food and ankle; Achilles tightness in both feet; full strength in the lower extremities; and some tenderness to palpation at various points on her feet. (Tr. 920). Dr. Metzler "did not feel as though any additional testing is warranted for her possible hypermobility syndrome," referred plaintiff to a physical therapist, and instructed her to use different inserts. (Tr. 921-22,

925). The same day, Dr. Lucas reported plaintiff's physical findings as again normal, with normal range of motion. (Tr. 584).

On April 23, 2014, plaintiff had her first visit with her physical therapist, and the ALJ noted that by May 19, 2014, plaintiff had failed to show up for one visit and was not compliant with treatment. She was discharged from therapy for noncompliance on August 10, 2014. She had attended seven visits and failed to show up for four visits. (Tr. 468-85).

On November 3, 2014, plaintiff went to the emergency room reporting an injury to her knee and swelling. (Tr. 490-93). An x-ray of her right leg was normal and showed no fracture or dislocation, intact articulations, and well-mineralized bones. (Tr. 684). An ultrasound venous Doppler of her right leg was also normal with no deep vein thrombosis. (Tr. 500-01). Plaintiff was instructed to limit weight-bearing on the right leg until it was not painful, and to ice and elevate it as needed. (Tr. 491).

Plaintiff's physical examinations remained unchanged in follow-up visits to her primary care physician, Leonard Lucas, D.O., every few months. (Tr. 747, 762, 796, 825, 840, 856, 877). Plaintiff's primary care physician reported that plaintiff researched various conditions on the internet, then reported similar symptoms. (Tr. 854).

Ultimately, plaintiff had only mild neuropathy in her legs, and reported only slight or mild pain. (Tr. 388, 406). There was no evidence of fluid build-up, with consistent clinical findings of normal sensation, normal motor function, normal deep tendon reflexes, normal muscle tone, normal strength, and no edema. (Tr. 565, 575-76, 584, 594, 602, 611, 630, 641, 651, 662, 747, 762, 796, 825, 840, 856, 877). Dr. Lucas prescribed several medications to plaintiff, but only one, Cymbalta, was for pain. (Tr. 554). Plaintiff said that with Cymbalta, her pain was about 50 percent better. (Tr. 554).

The Court must defer to the ALJ's evaluation of subjective complaints if it is supported by good reasons and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). The Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier*, 294 F.3d at 1022. Substantial evidence

exists in the record to support the ALJ's conclusions about plaintiff's subjective complaints. The ALJ identified a number of factors that undermined plaintiff's testimony, primarily inconsistencies between plaintiff's subjective reports and the medical records (Tr. 28-29), so the Court must defer to the ALJ's findings. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (determinations about the consistency of a claimant's subjective reports with the record are the province of the ALJ, and as long as good reasons and substantial evidence support the ALJ's evaluation, courts will defer to the ALJ's decision); *see also Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017), *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016).

### B. Insomnia as a Severe Impairment

Plaintiff also argues that the ALJ should have found her insomnia to be a severe impairment at Step Two. However, once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another as "severe" at Step Two does not constitute reversible error, as long as the ALJ continues in the evaluation process and considers the effects of the impairment throughout that process. *Harper v. Colvin*, No. 1:14 CV 31, 2015 WL 5567978, at *6 (E.D. Mo. Sept. 22, 2015). *See also Winn v. Comm'r of Soc. Sec.*, 615 Fed.Appx. 315, 326 (6th Cir. 2015); *Groberg v. Astrue*, 415 Fed.Appx. 65, 67 (10th Cir. 2011); Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 3:14 (Apr. 2018). This is because the regulations require the agency to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Plaintiff has the burden of demonstrating a medically determinable impairment lasting for a continuous period of at least 12 months. A medically determinable impairment is "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," and not merely a claimant's own statements about her symptoms. 42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1521,

416.921; SSR 96-4p (a symptom by itself does not establish a medically determinable impairment).

Although the ALJ did not find plaintiff's insomnia to be a severe impairment, he nevertheless discussed it in detail when making the RFC assessment. (Tr. 29-37). His evaluation was well-supported and he identified a number of factors that undermined plaintiff's testimony. Plaintiff reported significant sleep problems, which the ALJ noted, but he determined her reports were inconsistent with the objective medical evidence. The ALJ discussed notes from Sohail Khan, M.D., about a sleep study where plaintiff reported she did not sleep at all, but which showed she actually slept about 6 hours. (Tr. 30, 429-33). Plaintiff was given medication for sleeping and reported it helped by 25 percent, but also frequently admitted that she did not take it or was otherwise noncompliant (e.g. she continued to drink caffeine). (Tr. 31, 123, 621). The ALJ noted that "despite reporting severe sleep difficulties, there were notes she failed to take prescribed sleep aid medication." (Tr. 35, 621). He highlighted the fact that she reported getting good sleep to her psychiatrist, but denied sleeping well to other doctors at the same time. (Tr. 25, 508, 511, 514, 525, 593, 603, 650). He noted that her complaints of insomnia were sporadic. (Tr. 25, 508, 511, 514, 525, 593, 603, 650). The ALJ concluded that this diminished the persuasiveness of plaintiff's subjective complaints and alleged functional limitations. Other than plaintiff's subjective complaints, there was no persuasive evidence that plaintiff's insomnia resulted in headaches, fatigue, or frequent naps. There was no persuasive evidence that any treating physician determined that plaintiff's insomnia was uncontrollable despite compliance with treatment and that her insomnia resulted in severe limitations of function lasting twelve consecutive months in duration, despite treatment.

### C.    Plaintiff's Treating Podiatrist Opinion

Plaintiff also claims that the ALJ erred in discounting plaintiff's treating podiatrist opinion. Specifically, plaintiff claims that the reasons the ALJ gave for discounting plaintiff's treating podiatrist were inaccurate and inadequate.

A treating physician's opinion will generally be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If not, however, the ALJ may discount the opinion.

In this case, Jeffrey Boberg, D.P.M., opined that plaintiff had major dysfunction of the foot joints due to hereditary joint hypermobility, resulting in chronic overall instability. He also opined that plaintiff had inflammatory plantar fascia in both feet. (Tr. 407).

The ALJ gave Dr. Boberg's opinion "little to no weight," finding it was inconsistent with treatment notes from just a month earlier stating plaintiff could return to work with no limitation and she was doing well with her orthotic device and air cast. (Tr. 36). Plaintiff argues that this is inaccurate, because the notes state "she will attempt to return to work next week" and "she can try to return to work next week with her air cast." (Tr. 406-07).

However, the ALJ's conclusion is nevertheless supported by substantial evidence. The ALJ identified several inconsistencies: plaintiff told Dr. Boberg her pain had decreased from a 10 to a 4, and Dr. Boberg's physical examination revealed only slight or mild pain. (Tr. 406). Dr. Boberg's notes never suggested that plaintiff had any limitations on the amount of time plaintiff could walk during the day, and said in December 2013 she could try to return to work the following week with her aircast. (Tr. 406). This is inconsistent with Dr. Boberg's statements only one month later, in January 2014, that plaintiff could stand or walk for only one hour. (Tr. 406-07). Additionally, and as the ALJ noted, the medical evidence of record did not support plaintiff's claim she had joint hypermobility, and a neurologist specifically found she did not have hypermobility syndrome. (Tr. 26). Dr. Borberg's opinion assumed plaintiff had this condition, which undermined the opinion. (Tr. 36, 407, 921, 986, 1000). Finally, Dr. Boberg issued his opinion in January 2014, and plaintiff's subsequent examinations revealed that plaintiff had a normal gait and station without using an orthotic device. (Tr. 714, 728, 737, 904, 945) (stating plaintiff had a steady gait and ambulated independently

without using an assistive device). There is no evidence that plaintiff used an aircast at any point after January 2014. Accordingly, the ALJ's decision to discount Dr. Boberg's opinion is supported by substantial evidence.

### D. Plaintiff's Obesity

Finally, plaintiff claims that even though the ALJ found plaintiff's mild obesity to be a severe impairment, the ALJ failed to include any functional limitations related to plaintiff's obesity in her RFC assessment. Plaintiff argues that her obesity affects her plantar fasciitis, poly neuropathy, and mild lumbar osteoarthritis, but it is not clear how the ALJ's RFC accounts for these effects.

Social Security Ruling 02-1p provides that obesity can be a severe impairment that might limit a plaintiff's exertional functions, like sitting, standing, walking, lifting, carrying, stooping, and crouching. The Ruling recognizes that an obese individual will not have all or any of the possible limitations it enumerates. SSR 02-1p; *see also Cross v. Berryhill*, No. 4:16 CV 679 NKL, 2017 WL 465473, at *7 (W.D. Mo. Feb. 3, 2017). The Eighth Circuit has held that an ALJ adequately considers a claimant's obesity when the ALJ expressly discusses it in the decision, and the ALJ's RFC need not correlate a claimant's limitations to whatever condition might be causing it. *See Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015); *Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009).

Here, the ALJ specifically discussed plaintiff's diagnosis of obesity, discussed her weight loss and her pain on weight-bearing joints, and incorporated the limitations opined by Anne Winkler, M.D., Ph.D., regarding plaintiff's obesity. (Tr. 32-33, 35-36). Indeed, the ALJ admitted that given the medical and other evidence of record, "it is possible this residual functional capacity assessment understates the claimant's ability," but that she adopted the majority of Dr. Winkler's suggestions in viewing the record in the light most favorable to plaintiff. Plaintiff does not explain how the RFC does not account for her obesity-related limitations, and the Court is not persuaded that the ALJ erred.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                                 /s/   **David D. Noce**
                                       **UNITED STATES MAGISTRATE JUDGE**

Signed on August 12, 2019.